IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEVEARL L. BACON,                :
                                 :
        Plaintiff,               :
                                 :
        v.                       :  Civil Action No. 02-431-JJF
                                 :
ST. LT. R. TAYLOR,               :
LT. MS. S. FARMER, and           :
C/O MS. L. MCCOMB,               :
                                 :
        Defendants.              :

Devearl Bacon, pro se Plaintiff.

Eileen Kelly, Esquire, Deputy Attorney General, Delaware Department of Justice.
Attorney for Defendant.

**MEMORANDUM OPINION**

February 7, 2006
Wilmington, Delaware

Farnan, District Judge

Pending before the Court is Defendants' Motion For Summary Judgment (D.I. 87 ). For the reasons discussed, the Motion will be granted in part and denied in part.

## BACKGROUND

At the time of filing this action, pro se Plaintiff, Devearl L. Bacon, was incarcerated at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, formerly known as Gander Hill Prison. Defendants, C/O L. McComb ("McComb"), Lt. S. Farmer ("Farmer"), and St. Lt. R. Taylor ("Taylor") were correctional officers at HRYCI during all relevant times.

By his Complaint (D.I. 2) filed pursuant to 42 U.S.C. § 1983, Plaintiff alleges violation of his Eighth Amendment right to be free from cruel and unusual punishment and violation of his First Amendment right of access to the Courts. In addition, Plaintiff contends that his transfer to administrative segregation was in retaliation for exercising his First Amendment rights. Plaintiff alleges that because Officer McComb smoked inside the prison building, he has suffered from involuntary exposure to environmental tobacco smoke ("ETS") in violation of his Eighth Amendment right against cruel and unusual punishment. Specifically, Plaintiff alleges one instance of Officer McComb smoking on the tier and blowing smoke inside another inmate's cell, and several instances of Officer McComb smoking in the

1

control pod. Officer McComb does not deny smoking inside the prison.

Second, Plaintiff alleges that he was denied access to the courts because Officer McComb took his original draft of a legal complaint for a lawsuit against her, read it, and then refused to return it to him. Specifically, Plaintiff claims that because Officer McComb refused to return the draft to him, Plaintiff has suffered the irreparable prejudice of "los[ing] his own recognition and memory of dates . . ." related to his suit against Officer McComb for smoking. (D.I. 93). Officer McComb agrees that she took Plaintiff's document, read it, and did not return it to him when he requested; however, Officer McComb alleges that Plaintiff gave her permission to read the document and that she did not return it to him because of what she perceived to be the threatening nature of the document.

Finally, Plaintiff alleges he was improperly transferred to administrative segregation in retaliation for his lawsuit against Officer McComb. Officer McComb alleges that Plaintiff was written up on disciplinary charges and was moved to administrative segregation because prison officials believed that the document "presented a threat to the security or safety of the institution." (D.I. 88.)

2

## DISCUSSION

### I. Standard of Law

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the [non-moving party] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . .  In the

language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). However, the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## II. Exposure to ETS

In order to state a claim for violation of the Eighth Amendment for involuntary exposure to ETS, "the Supreme Court has held that an inmate must prove both that objectively, he was exposed to unreasonably high levels of ETS, and that subjectively, prison officials were deliberately indifferent to his exposure." Brown v. Minor, 2003 U.S. Dist. LEXIS 5097, *6 (D. Del., 2003)(citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).

Under the objective factor, an inmate "must show that he himself is being exposed to unreasonably high levels of ETS." Helling, 509 U.S. 25, 35 (1993). Additionally, the objective factor "requires a court to assess whether society considers the

risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. at 36.

Under the subjective factor, an inmate must prove that Defendants knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to prevent or diminish it. Farmer v. Brennan, 511 U.S. 825, 847 (1994). This deliberate indifference factor "should be determined in light of the prison authorities' current attitudes and conduct." Helling, 509 U.S. 25, 36 (1993).

In the instant case, Plaintiff acknowledges that his complaint is based on one incident of Officer McComb smoking a cigarette on the tier by another inmate's cell and several instances of her smoking in the isolated control pod. The Court cannot conclude from these allegations that Plaintiff was exposed to unreasonably high levels of ETS. Compare Helling, 509 U.S. 25 (1993)(finding unreasonably high ETS exposure where plaintiff was housed with a five-packs-per-day smoker); Atkinson v. Taylor, et al., 316 F.3d 257 (3d Cir. 2003)(finding unreasonably high ETS exposure where plaintiff was housed for seven months with "constant" smokers); and Brown v. Minor, 2003 U.S. Dist. LEXIS, 5097 (D. Del. 2003), aff'd 316 F.3d 257 (3d Cir. 2003)(finding unreasonably high ETS exposure where plaintiff had cellmate who smoked two packs per day).

Because the Court concludes that Plaintiff has failed to satisfy the objective factor, the Court will not consider whether Defendants' conduct constituted deliberate indifference under the subjective factor. Accordingly, the Court will grant Defendants' Motion For Summary Judgment with respect to this claim.

### III. Denial of Access to Courts

By his Complaint, Plaintiff alleges that Officer McComb opened and read the draft of his lawsuit against her and then refused to return it to him thus denying him access to the courts. It is well established that prisoners retain their constitutional right of access to the courts. Kershner v. Mazurkiewicz, 670 F.2d 440, 443-44 (3d Cir. 1981)(quoting Bounds v. Smith, 430 U.S. 817, 821 (1977)). To prove a violation of that right, a prisoner must establish that he was denied access to the courts and that he suffered an actual injury as a result. Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir. 1982).

In this case, Plaintiff has failed to allege an actual injury. Plaintiff contends only that as a result of not receiving his original draft back, he has forgotten the exact dates he saw Officer McComb smoking in the prison; however, Plaintiff fails to demonstrate how his inability to remember specific dates has unduly prejudiced his case. Accordingly, the Court will grant Defendants' Motion For Summary Judgment with respect to this claim.

IV. Retaliation

Plaintiff alleges that Defendants violated his First Amendment right to free speech by placing him in administrative segregation in retaliation for his having drafted a civil lawsuit against correctional officials. In order to prevail on a claim for retaliation in violation of First Amendment rights, a plaintiff must prove "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). The Third Circuit has adopted the burden-shifting framework articulated by the Supreme Court in Mount Healthy Bd. Of Ed. v. Doyle, 429 U.S. 274 (1977), which shifts the burden to prison officials to prove that their decision to take adverse action against the prisoner would have been the same, irrespective of the protected conduct, for reasons that are reasonably related to a legitimate penological interest. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

In the instant case, it is undisputed that Defendants' decision to place Plaintiff in administrative segregation was based on Plaintiff's confiscated document. Plaintiff contends the document was the draft of a lawsuit, while Officer McComb

7

contends that it was not a legal document, but rather handwritten threats against her. Specifically, Defendants contend that Plaintiff's document "presented a threat to the security or safety of the institution" (D.I. 88), and therefore, the decision to transfer Plaintiff was based on a legitimate penological interest. Viewing the facts in the light most favorable to the non-moving party, the Court concludes that Plaintiff's conduct, possessing a draft of a lawsuit document, was constitutionally protected. Here, Plaintiff was transferred to administrative segregation, brought back to his tier and housed among the general prison population, and then returned to segregation only days later. The Third Circuit has determined that, with respect to the adverse action requirement, confinement in administrative segregation can constitute adverse action. Szemple v. Talbot, 141 Fed. Appx. 52, 54-55 (3d Cir. 2005)(citing Allah v. Seiverling, 229 F.3d 220, 225-26 (3d Cir. 2000).

There is no question that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)(citing Bell v. Wolfish, 441 U.S. 520, 547 (1979). Applying this principle however, the Court concludes that there is a genuine issue of material fact whether Defendants could

reasonably interpret Plaintiff's lawsuit draft document as a threat to the security and safety of the prison, and thus, whether Defendants had a legitimate penological interest in placing plaintiff in administrative segregation. Accordingly, the Court will deny Defendant's Motion For Summary Judgment with respect to Plaintiff's claim of retaliation.

## VI. Qualified Immunity

A public official is entitled to qualified immunity if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Good v. Dauphin County Soc. Servs. For Children and Youth, 891 F.2d 1087, 1091 (3d Cir. 1989). A court confronted with a claim of qualified immunity must consider, first, whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If not, the inquiry ends, and the officer is entitled to qualified immunity. Id. If, however, a constitutional violation could be alleged when viewing the injured party's allegations favorably, the Court must next consider whether the right was clearly established. Id. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v.

Creighton, 483 U.S. 635, 640 (1987). Knowledge of general concepts, however, is not enough. Rather, the "inquiry must be undertaken in light of the case's specific context, not as a broad general proposition." Saucier, 533 U.S. at 201-202.

Because the Court has concluded that Plaintiff has alleged a First Amendment violation, the Court turns to the second consideration: whether the right was clearly established. In this regard, the Court must determine whether a reasonable person in Defendants' or Officer McComb's position would have understood that they were violating Plaintiff's First Amendment rights. Defendants contend that a reasonable officer would not have known that Plaintiff's document, which included a Section 1983 form, was a legal document. Further, Defendants contend that for this reason an officer would not have known they were violating Plaintiff's First Amendment rights by placing him in administrative segregation. The Court concludes that, accepting Plaintiff's version of the facts, reasonable officials would have known that their conduct violated Plaintiff's rights. Accordingly, the Court concludes that Defendants are not shielded from liability under the doctrine of qualified immunity.

**VII. Sovereign Immunity**

It is well-established that Section 1983 claims for compensatory and punitive monetary damages against a state or a state official in his or her official capacity are barred by the

Eleventh Amendment of the United States Constitution. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). As for state officials in their official capacities, the Supreme Court has further recognized that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. at 71 (citations omitted). "In a suit against state officials in their 'personal' capacity, however, where the plaintiff seeks recovery from the personal assets of the individual, the state is not the real party in interest; the suit is therefore not barred by the Eleventh Amendment." Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990).

Here, Plaintiff alleges that Defendants are liable in their individual capacities and does not seek compensation from the State. Accordingly, the Court concludes that Plaintiff's claim is not barred by sovereign immunity under the Eleventh Amendment.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion For Summary Judgment with respect to Plaintiff's ETS and denial of access claims. However, the Court will deny Defendants' Motion For Summary Judgment with respect to Plaintiff's claim of retaliation. An appropriate Order will be entered.

11